You may proceed. May it please the court. Good morning. My name is Britton Montz. I'm from Austin, Texas, and I'm here today representing the appellants and the plaintiffs in the district court case. The basic issue for the court today is one I know the Courts of Appeal have addressed around the country. It has to do with whether a company can impose mandatory arbitration on consumers, on its customers, using an online agreement. First, I will say we all know that the answer to that question is yes. In the Concepcion case, Justice Scalia's opinion, we know that can be done. But that's not really the issue here in this case. The agreements, and I say plural agreements, created a binding agreement to arbitrate claims and bar class actions. That is the bigger issue. It is a formation of contract issue, so we're not getting into issues of unconscionability or waiver where the plaintiff or the person challenging the clause has to come in and meet the burden. The burden here rests solely on Amazon, and it does here today in this de novo review of the lower court's ruling. This case involves two former Amazon sellers, both of whom had their accounts abruptly closed and terminated, and their money held for some 90-plus days. The case was filed under the Washington Money Transmitter Statute, the Consumer Statute, the contract itself, and equitable claims as well. Arbitration was compelled by the lower court, and this appeal has ensued. Now, what we have in this case, which is a little different from some of the reported cases on these clauses, these online agreements, is that it is undisputed that at the time relevant to this case, there were two online agreements floating around in the There is the participation agreement, which was the original seller agreement. That agreement at the time, although that's not the case now, one would check online, but at the time it allowed lawsuits to be brought in King County, federal or state court. That agreement still exists, it's just been changed to arbitration like the other more recent agreement, which is the BSA, or the Business Solution Agreement. The Business Solution Agreement is a global agreement. It applies to selling online, it applies to fulfillment, that is shipping, and it applies to the web store. So it applies to several things, and as a part of that, that agreement incorporated other program policies on Amazon's website. Did your client sign up and click the box on the Business Solutions Agreement? There are two plaintiffs, and the answer is yes as to both, although the impact of that is different. Although I'm addressing the issue of the BSA, assuming they all signed up under it first, then I will spend a moment with regard to Mr. Lane, one of the plaintiffs who originally signed up under the Participation Agreement. Okay, so, and this may incorporate that question as well, these two clients, the BSA pops up, they click, they acknowledge that they've read the terms of the agreement, correct? That's right, there's no dispute about it. So one of the terms of that agreement is an integration clause that says that it's the only agreement between the parties, correct? Well, it does have a generic integration clause, and we address it in the brief, but what it says in the next sentence in the integration clause is what's more important, we think, because there it says that in the event of any conflict between this agreement, this global agreement, and any other program policy on the site, the program policy shall control the more specific. And so, let's take the sentence before that. Under the integration agreement, the BSA would be the only agreement. Then, under the following sentence, if there's something that conflicts with that, that's a program policy, then the latter would control. Is that the way to read it? That's correct. Okay. So the BSA— So you're, at least with respect, I assume, to Mr. Lane, your argument is that this initial agreement called the participation agreement is a program policy, and if we don't interpret it that way legally, does your client lose? That is the issue with regard to the interplay of the BSA and the PA. Answer my question, that if the participation agreement doesn't qualify as a matter of law, as a program policy, which is the last sentence of the BSA integration clause, then your client would lose. Is that correct? Well, I think— Yes, as to the plaintiff, Peters. There's another issue I'll address as to the failed attempts by Mr. Lane to sign up under the BSA after his participation agreement account was terminated. He did go online and try to set up accounts, but those were rebuked by Amazon. They were not allowed—he was not allowed to use those accounts. They never came into being. The only one that did was formed by an LLC, which, of course, is different as a legal entity. And in Amazon's proof, that is the only account that was—that an entity related to Mr. Lane was created under the BSA. So that's a little bit different. But he did sign up for the BSA, Mr. Lane, as well, correct? He attempted to sign up for accounts, and he did click the boxes. The question is, what would be the consideration? In other words, he attempted to contract. He agreed to those terms, but Amazon rejected those attempts to set up that account and wouldn't allow him to use it. So we think that that would be inappropriate to hold him to the terms, the different terms of the BSA in that instance, when he—even though he wanted to agree to those he offered to, Amazon did not accept that attempt to create the account. So there's really no formation or consideration under that argument. That's kind of the second one I've gotten out of order, but that's what I wanted to say as to Mr. Lane. That's a different issue. We think that's even—we think that one is pretty basic. Now, going back to the other argument, which really would affect the class, would affect, I think, the most number of people during this time, this several-year period, who signed up under the BSA, where the participation agreement is on the website. And the question, again, as you raise, is whether or not the participation agreement is a program policy. And that is a defined term by Amazon under the BSA. Program policy is defined as all terms, conditions, policies, guidelines, rules on the Amazon site, its website, and its—or, disjunctively, seller central, including those shown on the policies and agreements section of seller central or elsewhere in the help section. So that is a very broad definition. And where we assert that the district court erred is that they did not give effect to the definition that Amazon wrote in the agreement. Well, as I understand, the district court said that would be absurd to put everything that's anywhere on the website incorporated into the contract. So why was the district court wrong about that? We think that that is a bit of a fallacy. Number one, there is no evidence in the record that there would be an absurd result. We have never argued. It was never our position that everything on the Amazon website would somehow be subsumed into the vacuum and sucked into the BSA. Is that the gist of your reading of the participation agreement, then? Not at all, because our reading of the definition of program policies would relate only to policies and rules and terms relating to the agreement to sell on the website. And the evidence in the record is that the only two things, the only two documents that exist on the website, as far as the proof, would be the BSA itself, the general agreement, and then the participation agreement, which deals only with selling on Amazon's website. Those are the only two things. So these what-ifs and sort of the sky's falling of all these things that would lead to an absurd result, there's no evidence of that. And I would suggest to the court that it doesn't need to engage in that sort of speculation and what-if, because under contract principles, it was Amazon that chose to write its website and to write these agreements. Can I ask you this? If you were right about your secondary argument of how he gets around the integration clause, can he represent a class? You're talking about as to Mr. Lane, the LLC issue. Both that as well as the fact that your argument is that he never became bound to the BSA. That's your fallback argument, right? That is the fallback as to that point. And so he can't be a class rep for anyone who is bound by the BSA, can he? I suppose you're right. In that instance, he would be a class rep for those under the participation agreement during that time frame. So do we have any idea how big that class might be? Well, we obviously haven't developed the record. I know at the hearing, the counsel for Amazon admitted there are millions of sellers, and there were sellers under the legacy agreement, the participation agreement, and under the BSA. So we know there are numbers in both categories. But what would be the injury to that mass number of people who, from all we know, are perfectly happy with their relationship with Amazon? Well, you're right. I'm not suggesting everyone would have a claim because not everyone's account has been terminated and their money held. That's true. So I'm just saying the record doesn't allow us to say how many are in a class. I mean, the threshold's fairly low, and we're talking about a universe of millions. The thing that was referenced in the district court's opinion relates to what information on the website was accessible from legacy sellers. Yes. It makes reference to a legacy seller like Plaintiff's Counsel Mr. Hayes. Are you associated with Mr. Hayes? No. I believe Mr. Hayes may be my co-counsel. Ms. Beth Terrell's somewhat at his office. We did put in the record some screenshots because, again, things have changed now. You can't reproduce this. Screenshots and declarations. And one thing that is clear is that you can get to, or could get to, the participation agreement on the Seller Central site. Do you have any declaration from your clients that they did that? We did not submit declarations from our clients. The point... We all know that many things can be accessed even when they're not supposed to be accessed, even when they're supposedly behind a firewall and when, in fact, they've been deleted and you can go into a way-back program. So there's a lot of ways to get stuff. But the point here is, is there any evidence from your clients as to what they accessed on the website that would give credence to their argument that the participation agreement is somehow a program policy? No declarations from our clients. But the proof that the other declarations that were submitted in connection with the motion practice here do show that that agreement was on the website and you could access it. And you didn't have to go behind a firewall. Did you have to be a legacy seller to do that? No. Or did you not represent one way or the other? You didn't have to be. And is that represented in the declaration? It is. And if the court would like those references... You may want to save the remaining time. I agree. Thank you. I will save my remaining time. Thank you. Good morning, Your Honor. May it please the Court. My name is Jim Grant. I'm here on behalf of Amazon Services. This case is about two individuals who voluntarily entered into and accepted Amazon's business solutions agreement not once but five times between them and in doing so agreed to arbitrate their claims. The District Court granted the motion to compel arbitration because it found there were no disputes of fact on the record at all. If I may, to start out, let me recap a little and try to refocus where we are. I think there's a question I'd like to get to. I don't want to interrupt your flow. But with respect to Mr. Lane, the argument is he was terminated for various reasons from his account status. So then he went on and he tried to sign up under the BSA and he clicked that he accepted and read. But he never got an account because they didn't permit him to open one. Is that accurate? That's the argument that they raised, if I may respond. Yes. So going back first to what the evidence was in the trial court, because there's a distinct difference here. The evidence in the trial court was that Mr. Lane actually did click on the sign-up page for the BSA and did open accounts four times. And those were his accounts. All of that evidence is undisputed. Now, plaintiffs are making a bit of a different argument now. But the fact is that yes, he did open four different accounts and yes, he did open or accept the business solutions agreement four different times. And as the courts pointed out, the business solutions agreement itself says that all disputes relating in any way to Amazon's agreements or its services, they are governed by and are to be determined by arbitration. So I'm sorry to nail this down. Is the point that the accounts were opened but Amazon never allowed him to do anything with them? Is that what it comes down to? That's the plaintiff's argument. In fact, they were opened and Amazon then later terminated the accounts when they identified them except Mr. Lane was successful in setting up an account and Amazon did abide by that account and he had that account on the system for several months. Would you remind us then of the chronology of when the multiple times were that he clicked on the BSA boxes and then when Amazon notified him or closed or blocked those accounts? So I can do that approximately. He originally signs up under the BSA I believe on June 3rd of 2012. Amazon terminated that account within days. I apologize, I can't say exactly  Approximately two weeks later he signs up again and Amazon identifies and terminates that account as well. Now the third account in the chronology and I should point out as well each time he does this he signs up under a different assumed name. In fact, plaintiffs have admitted these are all assumed names for Mr. Lane and the record shows that it was Mr. Lane each time doing this for his own business account. So the third time is when the assumed name is Professional Aviation Consultants LLC. That account again I apologize I don't have the exact number of months but he operates under that account for several months. Amazon fulfills all of its obligations under the agreement. Pays him for sales through the account. Eventually identifies that that is Mr. Lane's account as well because he engages in the exact same abusive behavior towards other sellers and attempts to try to fix prices on the website that were the reason that Amazon identified the first account. So that's the third account. And then again in I believe January 27 of 2013 after Amazon has terminated that account now Mr. Lane comes back and tries to set up a fourth account once again using an assumed name once again signing the BSA once again agreeing to the terms of the BSA. So that's the chronology. So the bottom line is that in your view he has the account once he click clicks and he's then covered by the BSA and it's after that point that Amazon closes or blocks the account. That's right your honor. And two answers to that question. That is the structure and how it works. So the way it works is Amazon makes an offer to individuals or companies if they want to become a seller on Amazon there is a sign up on the website that's exactly what Mr. Lane did and Ms. Peters did. And in the process of doing that he accepted the agreement. Now Amazon can terminate an agreement and we quoted the language of the agreement in our briefs and in fact it did. So that's the structure of the agreement. The second part of this is we're talking about an argument that was never raised never asserted is not part of the record in the district court and in fact the record in the district court was exactly the opposite. The argument would you what do you mean by the argument? I'm sorry. Plaintiff's argument your honor. Their argument today that Mr. Lane somehow never signed up for the BSA never accepted the terms of the BSA is 180 degrees opposite of their argument and the evidence that was presented in the district court. In the district court their entire theory was both plaintiffs did sign up under the BSA and then they go off on incorporation by reference. So the premise was they had to show that they actually had signed up under the BSA in order to advance their arguments and that was the argument they made. And that was the evidence we presented was that both plaintiffs in fact did sign up under the BSA that in fact those were effective and that by doing so they accepted the arbitration agreement. Well okay what was the purpose of the provision in the participation agreement that says that you can go to court? The participation agreement at that time? The purpose was to identify the forum if you were going to bring a suit. It was aimed at whom? It was aimed at sellers who signed up prior to November 3 of 2011 what we call the legacy sellers and those people to the extent they stayed on that agreement and never signed up under the BSA as the court pointed out with the integration clause that supersedes prior agreements they're governed by the participation agreement. So with respect to Mr. Lane then, he's under that agreement he's then terminated for the claimed antitrust violations he then signs up for the BSA and then that gets us to his other claim that the incorporation clause of the BSA in effect takes him back to the participation agreement. Both, not only the incorporation clause, although you're right the integration clause of the agreement does say now this is your overarching agreement, this is what applies. But also just the terms of the scope of the arbitration provision itself, it's what's considered and this court has said this in its prior precedence, it's what's considered an all disputes clause. It's the broadest form of coverage that can be written into an arbitration agreement because what it says is that it covers any dispute arising from or relating to this agreement or the services meaning if you have any kind of dispute it's covered. I don't have any problem with the way that the clause is written if it truly is clearly the only applicable provision. I get a little trouble with there being this other provision out there. You wrote all this and it's a little hard in signing up and looking at what's on a website and I looked at some of the websites that they have all these agreements out there. So doesn't your client have some responsibility to make sure that it's very clear what it is that somebody is signing up to? Yes and it was very clear here what someone was signing up to. Let me explain. So in the process of signing up under the BSA there's a click box arrangement. This is in the record I can give you the examples if you like. But what it says is you're agreeing to one agreement. I have read and agreed to the terms of the business solutions agreement. Check that. You've now entered into the agreement. You can become a seller. If you go into the business and I should point out it does not say you are entering into any other agreement. It does not say anything about the participation agreement. There's no reference at all. If you read the terms of the agreement itself it does not say at any point in that agreement that we are incorporating or you're agreeing to the participation agreement. In fact, throughout... I thought it incorporated everything. It had a very general incorporation. It has an incorporation that refers to program policies. Your argument is the one adopted by the district court that the participation agreement is a seller agreement not a program policy. Exactly, Your Honor. What is your best support for that? Do you have to go back to the participation agreement or where do you go? No, absolutely not. You go to the terms of the BSA itself. Throughout the course of the BSA there are references to distinctions between a seller agreement and the program policies. I can give you a sight in a moment of where we showed that distinction in our presentation to the district court. It's at Supplemental Excerpt of Record 124 where we went through and showed how the BSA refers to seller agreements and program policies. Where the BSA does mention the participation agreement, it refers to it as a seller agreement. I thought that the BSA actually said that. It does. It's page 22 of the Magrina Declaration. In any event, it's summarized on Supplemental Excerpt of Record 124. That's the way the agreement itself refers to it. We have an argument by the plaintiffs in effect that you incorporate by reference something that's never mentioned is never called a program policy and I should point out as well that through the seller central site that's where sellers can go identify what agreement applies to them and manage their accounts and the like. That also would tell both Mr. Lane and Ms. Peters that the governing agreement was a participation agreement. It's never mentioned there. But that's not, and then as I understood, council the source of some of the access to that centralized site information actually came from council, not from the individuals who are the plaintiffs. The evidence, to the extent it was, that plaintiffs put on in the district court was all based on their attorneys going on and either doing Google searches or going into accounts that were not comparable to these. But if you were in the participation agreement status and you went on as a seller then you would be linked to what agreements govern your role as a seller. If I had signed up as only a participation, only under the participation agreement I had not ever accepted the BSA as Mr. Lane did. If I went on my seller central page it would show the participation agreement. And you'd be in Kings County Superior Court. In King County Superior Court, that's correct. Who signs up to the participation agreement? No one any longer. Well who did then? At the time that we're discussing here no one. It was no longer used. What's it there for? It was there because of people who had signed up before and who were still up to 2011. Folks that were still selling on the platform at that time and it was still an applicable agreement as to them. It's entirely fair. Amazon would have that agreement accessible to them too, just as it has the business solutions agreement accessible to the people who are governed by the business solutions agreement. And once you've signed up under the business solutions agreement as both Mr. Lane and Ms. Peters did, you're governed by the business solutions agreement. You've still got some of those out there, right? The legacy... I believe so, Your Honor. So it's possible someone could, if they never signed up for the BSA and they're just operating under their prior agreement continuing and they hadn't been terminated under that agreement and they sued, they would be governed by the venue clause. If the only agreement applicable to your account... I'm sorry, Your Honor. I said they could go to federal or state court, but it would have to be in Key County. If the only agreement applicable to your account is the participation agreement, that's right. That's not the case here, though. And if I may, I'd like to reemphasize that we're talking about things that were not part of the record before the district court. Bear in mind that the district court allowed the plaintiffs here to take discovery, to ask all they wanted to, they took depositions of our witnesses, they did document demands. We responded to that fully. And what the district court did was, in effect, look at this as a summary judgment record. And in the district court, there was not a word of, Mr. Lane didn't enter into these accounts, that, in fact, this was an LLC. The first time we've seen any supposed evidence about that was their request for judicial notice, which they submitted with their reply brief in this court. The district court found, and I think quite plainly, that there's no dispute that they signed up for the agreements, there's no dispute that the scope of the arbitration agreements covers these individuals. And based on that record, compelled arbitration, I would submit that the district court was entirely right. And I take it there's no indication that they ever saw the participation agreement or relied on it or anything like that? That's a good point, Your Honor. That's exactly right, because in the district court, and Mr. Mons acknowledged this in his statements, plaintiffs didn't submit any evidence themselves. There's no declaration, there's no affidavit. They didn't come forward and say, wait, when I signed up for the BSA, I thought I was really signing up for the participation agreement. Wouldn't be a very plausible argument in any event, but there is no evidence. So, looking at this, under a summary judgment-like standard, which is appropriate for purposes of a motion to compel arbitration, the district court did exactly what it should do, and in fact, there's no reason to disagree with that now, because the record below was undisputed. If the court has nothing further, I'll close at this point. Thank you. The record. The facts. It was Amazon's burden to put on the evidence to show these agreements existed. The proof of all these accounts that we're talking about, when they were opened, that they were not allowed, that they were blocked, that the LLC opened an account, that comes from Amazon's proof. Specifically, ER 260 through 262. I think that's critical, because you'll see that they specifically identify that the LLC opened the account that really confirms that the BSA was agreed to on an active account, and it admits in this declaration that these other attempted accounts were failed, and they were blocked either, I think, the same day or the next day, according, some of them don't say, they were clearly never used. But doesn't the evidence also say Amazon terminated the accounts? You can't terminate that which doesn't exist. Well, I believe, and I want, I think now that you've raised it, it's important. I think those parts of the record are important, and it says Amazon recognized the second attempt and blocked it, is what it says. That is blocked. That's as to the LLC. No, no, that's as to his attempts to open DBA accounts individually. They were blocked. So, to me, blocked doesn't mean you have an agreement, and I think I would ask, I'll rely upon that part of the record. I think it speaks better than I could hear. The second thing, and here is where I think the district court committed factual error. There was an argument, and in her opinion, she says that the PA, the participation agreement, could not have been a program policy because the BSA specifically refers to a seller agreement. I think you asked a question about that momentarily. You have to go back and look at the BSA, and we talk about this on page of our opening brief, page 38, we address this. The BSA is a multiple services, not just selling. What the court pulled in the seller agreement language is not even in the seller portion of the BSA. She attributes it to that part of the agreement, but that's incorrect. So, I would submit that's just a factual error, and it's really insignificant to this issue of whether the seller part of the BSA incorporated or whether the participation agreement is a program policy. Thank you. I'd like to thank you both for your argument this morning. The case of Peters and Keene v. Amazon Services, LLC is
judges: Schroeder, McKeown, Davis